THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL DEMERON, Defendant-Appellant.

First District (2nd Division)   No. 85—2195

Opinion filed March 10, 1987.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan Disis, and Kevin T. Byrne, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Defendant-appellant, Michael Demeron (Demeron), was charged

by indictment with indecent liberties with a child, unlawful restraint, aggravated kidnaping, and two counts of kidnaping. After a bench trial, Demeron was convicted of indecent liberties with a child and sentenced to a four-year term of imprisonment. On appeal, Demeron raises four issues: (1) whether the trial judge based her ruling on the commission of sexual acts over which the court did not have jurisdiction; (2) whether Demeron was proved guilty beyond a reasonable doubt; (3) whether Demeron was prejudiced by the exclusion of portions of a conversation between the victim and Demeron's girlfriend; and (4) whether Demeron's sentence should be reduced. We affirm both the conviction and the sentence imposed.

The salient facts are as follows: 13-year-old M.S., a female, testified that on June 30, 1983, she was watching a softball game when Demeron pulled up in a car in which her friend A.F., a 14-year-old female, and A.F.'s cousin, "Marco," were passengers. M.S. and A.F. both testified that Demeron pushed M.S. into the back seat of the vehicle, but at the preliminary hearing M.S. claimed she voluntarily got into the back seat. Once M.S. was in the car, Demeron ordered her to sit in the front seat between him and Marco. M.S. and A.F. both testified that as Demeron drove the group to a nearby alley, he unbuttoned M.S.'s blouse, exposing her chest, and threatened to strike her if she tried to cover herself.

Once they arrived at an alley near 87th Street in Chicago, Demeron told A.F. and Marco to get out of the car. M.S. testified that after A.F. and Marco left the car, Demeron ordered her to get into the back seat, and when she refused, Demeron struck her with an open hand. According to M.S., they both then crawled into the back seat, and Demeron forced M.S. to engage in sexual intercourse, during which M.S. screamed for her mother.

A.F. testified that after leaving the car, she and Marco walked around the corner. She then heard M.S. saying "leave me alone" and turned around to see that the car was shaking and that M.S. and Demeron were in the back seat. A.F. observed Demeron get out of the back seat of the car and zip up his pants and fix his belt. She noticed that M.S. and Demeron were sweating when she and Marco returned to the car.

A.F. and Marco then got back into the car and Demeron drove the group to his apartment in Hammond, Indiana. M.S. testified that later in the evening Demeron took her outside of the apartment building in Indiana and forced her to perform fellatio and to engage in sexual intercourse and that she received scratches and bruises on her back from trying to crawl away. A.F. testified that she and Marco followed

Demeron and M.S. outside and that she witnessed M.S. orally copulating Demeron. M.S. testified that the next evening Demeron again forced her to perform oral sex in the laundry room of an adjoining building. A.F. claimed she also witnessed this sexual act through a window in the door of the laundry room and believed that M.S. received the scratches and bruises on her back when Demeron put her on the ground. Demeron drove M.S. home the next day.

The only witness who testified for the defense was Sharise Parrish (Sharise), who was Demeron's girlfriend as well as A.F.'s sister. Sharise lived in Demeron's apartment in Hammond, Indiana, and on the day of incident she returned from the store and found Demeron, A.F., M.S., and Marco in the apartment. Sharise testified that M.S. never complained that Demeron had done anything to her, nor did she tell Sharise she wanted to go home. Sharise also claimed that she slept with Demeron and that M.S. and Marco shared a bed in the same room with A.F. One of the nights Sharise claimed she saw Marco pulling M.S.'s hair in bed, and she asked M.S. if she wanted to sleep elsewhere, but M.S. responded that she did not. M.S. admitted that she had written a "love letter" to Marco in which she stated that she would do anything he wanted.

On cross-examination, Sharise stated that she had told M.S. that Demeron was her boyfriend. On redirect examination, the defense was prevented from asking Sharise, on the ground of hearsay, whether M.S. told her in the same conversation that Marco was her boyfriend. Sharise also asserted that the laundry room in the adjoining building did not have a window.

After M.S. returned home, she was initially afraid to tell her mother what had happened, but later that day she went to the hospital, where she was examined. M.S. had on the same red panties she was wearing when Demeron had intercourse with her. The panties as well as a vaginal specimen were taken from the victim and sent to the Chicago crime lab, where they were examined by Chicago police officer Rhoda Doyle, a microanalyst employed by the Chicago police department. Officer Doyle testified that she found intact spermatozoa on the victim's panties and vaginal swab.

Demeron was subsequently convicted of indecent liberties with a child, but was found not guilty of the kidnaping and unlawful-restraint charges based on the conflicting testimony as to whether M.S. had entered Demeron's vehicle voluntarily. Demeron appeals from the conviction and the four-year sentence imposed.

We first address the question of whether the trial judge based her ruling on the commission of sexual acts over which the court did not

have jurisdiction. On appeal, Demeron argues that since the trial court's finding of guilt was based on acts which occurred outside the State of Illinois, his conviction must be reversed since the court did not have jurisdiction over those acts. In support of his contention, Demeron relies exclusively on a statement by the trial judge at the sentencing hearing, in which she stated:

"And in this instance, she was with you, another man, and another underaged girl for over the weekend. And you were found guilty during this period of time of having sexual intercourse with her. The course of conduct, the responsibility being on you, is serious, and for that period of time."

Demeron concludes that "[f]rom the language above it is clear that the Court's finding is based on the testimony concerning alleged sexual acts outside of the State of Illinois. Since the court had no jurisdiction over that conduct, *** Demeron's conviction for indecent liberties should be reversed."

■■ We first note that it is clear that the acts in Indiana were admissible in the trial proceedings because they were relevant, not for the purpose of proving distinct offenses, but as showing the relationship and familiarity of the parties and as corroborating M.S.'s testimony as to the particular act relied on for conviction. (*People v. Arbuckle* (1979), 75 Ill. App. 3d 826, 835-36, 393 N.E.2d 1296.) Additionally, the Indiana acts were properly admitted as part of the *res gestae*, since they were part of the continuous narrative of events that led up to Demeron's arrest. (*People v. Tiess* (1981), 97 Ill. App. 3d 45, 49, 421 N.E.2d 1059.) Since the acts in Indiana were relevant and admissible at trial, the law is well established that the judge can consider them in sentencing. Trial judges are granted wide latitude as to what they can properly regard in sentencing; the court can consider the "general moral character of the offender, his mentality, his habits, his social environments, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime and the stimuli which motivate his conduct." (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 809, 408 N.E.2d 280.) A sentencing court may even properly consider evidence of criminal activity not resulting in a conviction if relevant, accurate, and subject to cross-examination. (*People v. Griffiths* (1983), 112 Ill. App. 3d 322, 331, 445 N.E.2d 521.) In this case, cross-examination was available as to the acts in Indiana. Hence, it is evidence that the trial court was explaining the rationale for its sentence, not its finding with respect to Demeron's guilt.

■■ Demeron's second contention is that he was not proved guilty beyond a reasonable doubt. The standard of review we employ in ad-

dressing this issue was definitively set forth in *People v. Boyd* (1980), 87 Ill. App. 3d 978, 982-83, 409 N.E.2d 392, where the court stated:

"It is well settled in this State that where, as here, a conviction of the offense of taking indecent liberties with a child depends on the testimony of the complaining witness, and the defendant denies the charge, there must be substantial corroboration of her testimony, or the testimony must be otherwise clear and convincing. [Citations.] But the testimony of a complaining witness in an indecent liberties case need not be crystal clear and perfect as far as memory is concerned in order for her testimony to be clear and convincing. [Citations.] *** [A] witness' credibility in a prosecution for indecent liberties with a child is to be determined by the trier of fact [citations], and a court of review will disturb the jury's finding in such a case only when the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt [citations]." (87 Ill. App. 3d 978, 982-83.)

Demeron stoutly asserts that M.S.'s testimony was "highly incredible, thoroughly impeached, and contradicted by the testimony of other witnesses." Further, that the testimony offered by M.S. "was so highly incredible that it might be said to be self-impeaching." (Citing *People v. Barfield* (1969), 113 Ill. App. 2d 390, 395, 251 N.E.2d 923.) It is impossible to understand from the record how Demeron can make such a claim, however tongue-in-cheek it may be. M.S.'s testimony, strongly corroborated by A.F.'s account, certainly was not so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt as to Demeron's guilt. Demeron produced absolutely no evidence in his behalf to refute the detailed testimony of M.S. and A.F. regarding what transpired in the alley near 87th Street. The sole defense witness, Sharise, could testify only as to events that occurred in Indiana, and hence utterly failed to rebut the evidence concerning the offense in Chicago with which Demeron was charged. We believe that the trial court was fully justified in considering the uncontroverted testimony of M.S. and A.F. as credible, and therefore we refuse to disturb the reasonable finding of the trier of fact.

■■ ■ Our next inquiry concerns whether Demeron was prejudiced by the exclusion of portions of a conversation between M.S. and Sharise. As mentioned earlier, on cross-examination the State was allowed to ask Sharise whether she told M.S. of her relationship with Demeron. On redirect examination, the defense sought to establish that during this same conversation, M.S. told Sharise that Marco was her boyfriend. The State objected on the basis of hearsay and the

court sustained the objection. Demeron contends that this exclusion of a portion of the conversation deprived him of a fair trial, because, his argument runs, the timing of what M.S. told Sharise was particularly important, for the conversation would have occurred after the alleged intercourse in Illinois, and therefore it becomes "far less likely that if the acts as alleged by [M.S.] had occurred she would still proclaim Marco to be her boyfriend."

It is well settled that when a party brings out part of a conversation, the other party has the right to elicit the complete conversation "so far as it is relevant." (*People v. Provo* (1951), 409 Ill. 63, 66, 97 N.E.2d 802; see also *People v. Weaver* (1982), 92 Ill. 2d 545, 556, 442 N.E.2d 255.) This rule is commonly known as the "principle of completeness." According to one authority:

> "[T]he principle of completeness does not give an adverse party an automatic right on his next examination of the witness or on rebuttal to introduce an omitted part of a *** related conversation otherwise inadmissible on the ground that the opponent has 'opened the door.' It is within the court's discretion, however, to permit introduction, in the interests of justice, of such evidence where necessary to refute or explain an unfavorable inference that might arise from the evidence originally admitted." (E. Cleary & M. Graham, Illinois Evidence, sec. 106.2, at 38 (4th ed. 1984).)

In this instance, however, we do not find it necessary to determine whether the trial judge abused her discretion in not allowing the complete conversation to be brought out on redirect examination, because even if the exclusion were error, it was clearly harmless error not warranting reversal.

Harmless error is a technical violation of a rule of evidence not considered a sufficient basis for reversal because the admission or exclusion did not affect a substantial right of a party. (87 Ill. 2d R. 615(a); *Kotteakos v. United States* (1946), 328 U.S. 750, 765, 90 L. Ed. 1557, 1567, 66 S. Ct. 1239, 1248; *Wilson v. Chicago & Western Indiana R.R. Co.* (1937), 365 Ill. 405, 408, 6 N.E.2d 634.) In *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526, the supreme court summarized various approaches for measuring harmless error and determined that error can be harmless if other properly admitted evidence overwhelmingly supports the conviction or if the excluded evidence is cumulative or merely duplicates properly admitted evidence. *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, 429 N.E.2d 526.

An examination of the other evidence in the case leads to the inevitable conclusion that there was overwhelming evidence which sup-

ports the finding of Demeron's guilt. As mentioned earlier, there was reliable, uncontroverted testimony from M.S. and A.F. concerning the events in the alley near 87th Street, as well as testimony from the police microanalyst which indicated that M.S. was indeed the victim of the offense with which Demeron was charged. The excluded portions of the conversation between M.S. and Sharise would not have contradicted this evidence. Moreover, the portions of the conversation at issue here are to a certain extent cumulative considering that M.S. freely testified to her affection for Marco. Though the timing of this particular statement by M.S. perhaps distinguishes it somewhat from her other testimony, it is certainly unlikely to have made a difference in the mind of the trier of fact. In the words of our supreme court, we "can safety conclude that a trial without [the] error would produce no different result." *People v. Warmack* (1981), 83 Ill. 2d 112, 128-29, 413 N.E.2d 1254.

■ The final issue we address relates to whether Demeron's sentence should be reduced. Demeron committed the offense while the prior indecent-liberties statute was still in effect, and the relevant provision at the time established that indecent liberties was a Class 1 felony. (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(1).) Effective July 1, 1984, the indecent-liberties statute was repealed and replaced by Public Acts 83—1067 and 83—1117, the criminal sexual assault law. Conduct which was previously defined as indecent liberties with a child, sexual intercourse with an individual under the age of 16, became criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—15(b)(1)) and was classified as a Class A misdemeanor (Ill. Rev. Stat. 1985, ch. 38, par. 12—15(c)), providing for a sentence of less than one year of imprisonment (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—3(a)(1)).

In arguing that his sentence should be reduced, Demeron relies on section 4 of "An act in relation to the construction of the statutes" (section 4), which provides:

> "If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect." (Ill. Rev. Stat. 1981, ch. 1, par. 1103.)

Demeron concedes, however, that the criminal sexual assault act was drafted with a savings clause provision which utilizes the date of the offense as the point of determination as to whether an individual is subject to the new provisions. The clause reads:

> "Savings clause, construction. The abolition of any offense by this Act does not affect any prosecution pending, penalty, pun-

ishment, disqualification from office or employment forfeiture incurred, or rights, powers, or remedies accrued under any law in effect immediately prior to the effective date of this amendatory Act of 1983, which related to the abolished offense. The provisions of this amendatory Act insofar as they are the same or substantially the same as those of any prior statute, shall be construed as a continuation of such prior statute and not as a new enactment.

This amendatory Act of 1983 shall only apply to those persons who commit offenses prohibited under Sections 12—13 through 12—16 of the Criminal Code of 1961, as amended, *on or after* the effective date of this amendatory Act." (Emphasis added.) 1983 Ill. Laws 7306.

Demeron proposes that this language prevents the automatic retroactive application of the new act, but not the right to claim affirmatively its mitigating effects as provided by section 4.

Demeron's argument, however, runs directly contrary to established case law and is accordingly rejected by this court. In *People v. Fisher* (1985), 135 Ill. App. 3d 502, 508, 481 N.E.2d 1233, the defendant, convicted of indecent liberties with a child, argued that he should have been given the right to elect sentencing under the new aggravated-criminal-abuse statute since his conduct would constitute a Class 2 felony instead of the Class 1 felony for which he was convicted. Just as in the instant case, Fisher committed the offense while the prior indecent-liberties statute was still in effect. The court initially noted that section 4 applies only to amendments which mitigate the punishment for an offense and not the amendments which change the nature or substantive elements of an offense. (*People v. Palmore* (1983), 113 Ill. App. 3d 926, 929, 446 N.E.2d 911.) The court then rejected defendant's reliance on section 4, determining that the enactment of the criminal sexual assault and abuse law of 1984 substantially changed the nature of the offense with which Fisher was charged. The *Fisher* court also observed that the savings clause of the new act specifically stated that the Act would apply only to those persons who commit offenses under sections 12—13 through 12—16 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13 through 12—16), as amended, on or after the effective date of the statute. Although the new criminal sexual assault and abuse law was evidently in effect when Fisher was sentenced (since the court noted defendant's failure to raise it at his sentencing hearing), the court held that the statute had no application whatsoever since the offense occurred prior to the effective date of the new law.

A similar result was reached in *People v. Mack* (1985), 133 Ill. App. 3d 788, 795, 479 N.E.2d 445, in which the defendant argued that he was entitled to a reduction of his sentence on his three felony counts of indecent liberties with a child by the enactment of the new criminal sexual abuse legislation which would have reduced the penalties for the acts for which he was convicted to a Class A misdemeanor. The court rejected the defendant's contention, stating that the new statute affected "substantive elements" of the sex offense charged (*i.e.*, indecent liberties with a child) rather than changing the sentencing provisions only. (*People v. Mack* (1985), 133 Ill. App. 3d 788, 797.) As in *Fisher*, the *Mack* court also pointed out that sentencing relief was effectively barred by the savings clause of the new act. *People v. Mack* (1985), 133 Ill. App. 3d 788, 797.

Hence, it is evident based on the clear authority of *Fisher* and *Mack* that Demeron is not entitled to rely on the new statute since it changes the nature of the offense of indecent liberties, as opposed to merely the penalty, and, furthermore, the savings clause mandates that the accused should be convicted and sentenced under the law in effect at the time the offense was perpetrated.

For the above reasons, we affirm the conviction and the sentence imposed.

Affirmed.

STAMOS and BILANDIC, JJ., concur.