THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD JOHNSON, Defendant-Appellant.

First District (6th Division)   No. 1—86—2183

Opinion filed August 24, 1990.

RAKOWSKI, J., dissenting.

Kenneth L. Jones, of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Mercedes Luque-Rosales, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

The defendant, Richard Johnson, and Charles Turner were indicted for residential burglary of the home of Carlo Farino at 1827 North Fairfield in Chicago. Turner pleaded guilty to the reduced charge of burglary and testified for the State in the jury trial of the defendant. The defendant was convicted of residential burglary and sentenced to 10 years' imprisonment.

■ Before trial the defendant moved to dismiss the indictment based on allegedly improper comments made by the assistant State's Attorney before the grand jury. Apparently, the defendant had been discharged after a preliminary hearing. Before the grand jury the following occurred:

"THE FOREPERSON: Why was there a finding of no probable cause at the preliminary hearing?

THE WITNESS [Police Officer]: The Judge felt that the State's Attorney didn't produce enough questioning to prove

that there was an actual burglary. The State's Attorney didn't ask enough questions, he felt.

[STATE'S ATTORNEY]: It was established through your testimony that something was taken from there identified by [the complaining witness] and recovered by you, is that correct?

THE WITNESS: Yes.

[STATE'S ATTORNEY]: The Judge wanted more?

THE WITNESS: More.

[STATE'S ATTORNEY]: Presumably a motion picture of the crime, I presume."

The defendant cites no authority to support his claim that the indictment should be dismissed. The applicable rule is expressed in *People v. Stanley* (1981), 95 Ill. App. 3d 910, 913, 420 N.E.2d 727, 730:

"Where a defendant charges an irregularity or impropriety in the conduct of a prosecutor in a grand jury proceeding, the burden is on the defendant to show that the prosecutorial conduct complained of resulted in actual and substantial prejudice to him. [Citations.]"

The trial judge determined that the defendant had failed to show any prejudice and denied the motion to dismiss. We agree that the offhand remark by the prosecutor was innocuous and, therefore, did not constitute actual and substantial prejudice.

The defendant next contends that reversible error occurred when the judge permitted the introduction of prejudicial hearsay evidence. The residence of Carlo Farino at 1827 North Fairfield was burglarized on August 28, 1984, and two radios were stolen. Farino was not home at the time of the burglary.

Officer Raymond Stampnick and his partner, Officer Ustaszewski, responded to a call of a burglary in progress at 1827 North Fairfield in Chicago. They both testified that when they arrived at the scene, several Hispanic men came up to them and told them that they had seen four individuals running from the scene and gave the officers descriptions of the individuals. The officer said that the men did not want to give their names because they did not want to become involved in the case. They then toured the area and saw a man who fit one of the descriptions that had been given to them. When they approached the man, he ran and hid in some bushes. They placed that man, who was the defendant, under arrest and returned to 1827 North Fairfield where the defendant was identified by the Hispanic men.

Stampnick testified that, after the defendant was read his *Miranda* rights, he told the officers that he did not go into the house; he only stood on the back porch and acted as a lookout. He took them

to an apartment building at 2606 West Homer where he said the other participants in the burglary could be found. The officers went into one of the apartments and arrested two juveniles and Chester Turner. The officers found two radios lying on the kitchen floor. Those radios were later identified by Carlo Farino as his property.

After Turner pleaded guilty to the reduced charge of burglary, the State recommended a sentence of 30 months' probation and drug rehabilitation treatment conditioned upon Turner disclosing "the full truth" in the defendant's trial. Turner testified that on August 28, 1984, he, along with two juveniles, James Mines and Michael Walker, and the defendant, tried twice to enter the house at 1827 North Fairfield. The first time they tried to get into the house Mines was not with them, and they tried entering through a window which the defendant broke, but they were too big to enter.

As they were walking back home, they met James Mines, who was of small build, and Mines agreed to return with them to Farino's house. They were trying to enter Farino's house because the defendant had told them that there was a large amount of money inside. Mines was able to enter the house through a back porch window which Turner said the defendant had opened. Once Mines was inside the house, he opened the back porch door and the defendant, Walker and Turner entered. They searched the bedroom for money, but when they could not find any, the defendant left. Turner, Mines and Walker took two radios and a tire pump from the house and left. As they were leaving the house they met up with the defendant and showed him what they had taken; the defendant told them that "he could pretty positively sell the stuff." The defendant left, and they went into the back apartment at 2606 Homer. About 10 minutes later the police arrived with the defendant and took Turner, Mines and Walker into custody.

Turner gave the police a statement in which he said, "I watched on the porch while the other two individuals went in." He admitted that that statement was not true and that he said it because he assumed that if he said he watched on the porch the charges might be accessory to residential burglary instead of residential burglary. He told the police that he was with two individuals rather than three because Mines and Walker were juveniles.

The prosecutors promised that they would recommend that part of his probation be placement in a live-in residential drug treatment center for treatment of drug addiction. He was addicted to cocaine and had been using cocaine for about two years. He used cocaine in various ways, snorting, smoking or shooting it with a hypodermic needle.

He testified that he was aware that the sentence for residential

burglary was 4 to 15 years. When he was asked what sentences were possible for burglary, the State's objection was sustained. (No error is assigned to this ruling.) He testified over objection by the State that the prosecutors had told him he could not get probation after a conviction for residential burglary. He said that he used cocaine "as much as [he] can get it." The cost of his cocaine habit ranged between $25 a day and $200 a day.

The defendant contends that reversible error occurred when the State was permitted to show that the unidentified Hispanic men first told the police officers that four individuals, whom the Hispanic men described, had fled from the scene and that those individuals later identified the defendant as one of the four men.

In its brief, the State does not attempt to justify the admission of the statements made to the police by the unknown Hispanic men. In oral argument in this court, for the first time, the State maintained that the evidence was admissible to explain police procedure. At our invitation, the State submitted certain authority to us. Although the State has waived the argument by not including it in its brief, we deem it appropriate to answer it.

■ There is appellate court authority which would support the introduction of the testimony of the police officers in this case on the ground that it explained police procedures. (See *e.g., People v. Leverston* (1985), 132 Ill. App. 3d 16, 476 N.E.2d 1344.) Two of the cases cited by the State in response to our invitation are *People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293, and *People v. Bryant* (1984), 123 Ill. App. 3d 266, 462 N.E.2d 780. Those cases illustrate the misunderstanding that his arisen in the appellate courts over the difference between a police officer testifying that he had a conversation with a witness without disclosing the contents of the conversation and testifying to the contents of the conversation. In *Loggins*, police officers testified that two unidentified witnesses reported a license number to them and that a computer license check of the number revealed that the car was registered to the defendant. The appellate court rejected the claim of error and cited *People v. Bryant*. In *Bryant*, however, the officer testified only that he spoke to a "witness" who did not give his name. The contents of the conversation between the police officer and the witness were not introduced. Consequently, *Loggins'* reliance on *Bryant* is misplaced. The distinction between an officer testifying to the fact that he spoke to a witness without disclosing the contents of that conversation and an officer testifying to the contents of the conversation is explained in *People v. Johnson* (1979), 68 Ill. App. 3d 836, 842, 386 N.E.2d 642, 646. If there be any doubt in the

matter as a result of conflicting appellate court opinions, the supreme court in *People v. Gacho* (1988), 122 Ill. 2d 221, 522 N.E.2d 1146, has resolved it. In *Gacho*, the police officer testified that he had a conversation with the deceased in the hospital and that after that conversation he and his partner went to look for the defendant. The supreme court rejected the claim of error and pointedly added this observation:

"Had the substance of the conversation that [the officer] had with [the deceased] been testified to, it would have been objectionable as hearsay. The testimony of [the officer], however, was not of the conversation with [the deceased] but to what he did and to investigatory procedure. [Citations.]" (122 Ill. 2d at 248.)

It is clear to us, therefore, that the testimony of the police officers that other parties had identified the defendant was error.

■ The State does argue in its brief that the defendant waived any objection and that any error in admitting the identification evidence was harmless. We reject the State's argument that any objection was waived. Although the defendant did not object to the testimony of the police officer concerning the identification made by the unidentified persons, four days before the trial began the defendant made a written pretrial motion *in limine* to exclude all identification testimony by the police. A copy of that motion is in the record. The motion *in limine* was referred to during the argument on the defendant's post-trial motion; the judge remembered that he had denied the motion *in limine* but not the reasons for denying it. It is obvious to us, therefore, that the defendant did raise the matter properly in the trial court and that there is no waiver. With respect to the second part of the State's answer—that admission of the identification by unknown persons was harmless error—we will defer our discussion on this question until we consider the defendant's next argument that reversible error occurred during the State's closing argument.

During the opening portion of the State's final argument the following occurred:

"[STATE'S ATTORNEY]: [The police officers] spoke with four or five Hispanic people who were in the alley behind Mr. Farino's house, ladies and gentlemen. They did not get names. They asked for names, they asked for addresses. Those people did not want to be involved. Those people did not want to come into a court and testify against Richard Johnson or anybody else. Yes, they called in a burglary. *Yes, they identified the defendants. Yes, they gave a complete description of the four people that ran.* They don't want to come in. That does not take away from your duty, ladies and gentlemen. You wanted to come

in. You wanted to serve and you are here to serve the People of the State of Illinois. You cannot take the same attitude as those four or five people that didn't want to come in and didn't want to do their duties and say what they saw about Richard Johnson. You are here and you have heard the evidence. Just because other people don't want to get involved, does not mean that criminals in this State go free. Enough people—

[DEFENSE ATTORNEY]: Objection.

THE COURT: Overruled." (Emphasis added.)

Later, the prosecutor said that the police brought the defendant back and "[the defendant] was identified."

During the closing portion of the final argument the following occurred:

"[STATE'S ATTORNEY]: You live in the community. We're lucky that people are good enough to pick up the phone and call. There are—*a lot of them are scared. They have to live in that community*. They don't want to give their names and their addresses.

[DEFENSE ATTORNEY]: Objection, Judge. I object to this whole line of argument. There is no evidence of that.

THE COURT: Overruled.

[STATE'S ATTORNEY]: You live in the community and you know this.

[DEFENSE ATTORNEY]: Objection, again.

THE COURT: The jury is to remember the testimony that was given at the trial. Proceed.

[STATE'S ATTORNEY]:. But we are fortunate that they do at least call up. They do cooperate to some exten[t]. That's good.

* * *

[STATE'S ATTORNEY]: Ladies and gentlemen, you will also, I believe[,] be instructed that you are not to concern yourself with possible punishment. Now, *this is not a mandatory prison case*, there is a certain exception *which counsel knows about* and need apply.

[DEFENSE ATTORNEY]: Objection.

THE COURT: Overruled.

[DEFENSE ATTORNEY]: There is no basis—

THE COURT: Overruled.

[STATE'S ATTORNEY]: And it is for the judge to decide what the sentence should be. It is not your province." (Emphasis added.)

■ The prosecution's argument was improper for a number of reasons: first, it emphasized the improper hearsay evidence that the defendant had been identified by other persons (see *People v. Johnson* (1979), 68 Ill. App. 3d 836, 386 N.E.2d 642); second, it improperly suggested that the other persons who identified the defendant to the police did not testify because of fear, implicitly of the defendant (*People v. Lopez* (1987), 152 Ill. App. 3d 667, 504 N.E.2d 862); and third, it improperly suggested that the defendant could receive probation or, at least, could avoid imprisonment. *People v. Neeley* (1974), 18 Ill. App. 3d 287, 309 N.E.2d 725.

The State maintains that the defendant waived any assignment of error in the State's argument because, once again, the defendant did not raise it in his post-trial motion; that the defendant invited the State's argument that the witnesses were afraid to testify; and also invited the argument concerning punishment. The State contends further that any error in the final argument was also harmless.

On the question of waiver, the State is incorrect. The defendant did raise the State's improper argument in the post-trial motion. In addition, we do not agree that the defendant invited the argument that the witnesses were afraid or that the defendant might not be sentenced to the penitentiary.

In the defendant's closing argument, the defendant's attorney argued that the police did not use sufficient effort to have the unknown Hispanic men come to court. He repeated the police officer's testimony that the witnesses told him that they did not want to get involved. He argued that it was reasonable to infer that the Hispanic men told the police that the defendant was not the man. The State now contends that that argument invited the State's argument that the witnesses were afraid to testify. We do not agree that the defendant's argument that the witnesses might have said something else at the scene invited the argument that they did not come into court because of fear of the defendant.

The State also contends that the defendant invited the reference to possible punishment "when [the defendant's attorney] argued that this case involved a mandatory prison term of 4-15 years." The State's brief does not refer to any part of the record to support its statement. We have reviewed the defense's closing argument, and the only reference to a sentence for residential burglary came when the defendant's attorney correctly recited the testimony of Turner that his attorney told him that the sentence for residential burglary was 4 to 15 years in the penitentiary and that there was no probation. This was a proper argument addressed to the motive of an accomplice in testifying. The

greater the possible penalty, the greater inducement to testify in return for an avoidance of that penalty. That proper argument and correct statement of the law did not invite the incorrect and misleading statement by the prosecutor that, "this is not a mandatory prison case" and that "there is a certain exception *which counsel knows about* and need apply." (Emphasis added.) The State tells us that its response was justified to point out the availability of treatment for the defendant under the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, pars. 6301 *et seq.*). Under section 21 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6321) the treatment was available only to addicts, and there is nothing in the record suggesting that the defendant was an addict. Moreover, the defendant was on probation at the time he was arrested for this offense, and the Act provided that one on probation or parole could not receive treatment unless the appropriate parole or probation authority consented to it. Therefore, we conclude that the defendant was not eligible for treatment under the Act and the argument was not only an incorrect statement of the law, which contradicted the statement of the defendant's attorney, but it suggested that the defendant's attorney made the statement knowing it to be untrue. To make the matter worse, the defendant's objections to this argument were overruled.

Another improper argument was made when the prosecutor sought to explain what prompted the State to make an agreement with Turner:

"[STATE'S ATTORNEY]: On deciding in a situation where there is [*sic*] two or more co-defendants, whether we want to make an offer to somebody to get them to testify, we don't just flip a coin, say, well, we do Mr. A, heads, and Mr. B, tails.

[DEFENSE ATTORNEY]: Objection, this is not based on the evidence.

THE COURT: Overruled.

[STATE'S ATTORNEY]: There's [*sic*] a lot of considerations that go into it. Mr. Turner, admitted to you, that he did wrong. He got up there and he admitted it. He's also admitted to you that he knows, he needs help. He has a drug problem. He does want to do something about it. But don't be misled, he's not going to go to any—

[DEFENSE ATTORNEY]: Objection.

THE COURT: Overruled.

[STATE'S ATTORNEY]:—go to any country club and get some treatment and walk out. It is an in-house treatment. He'll be in there. He can't walk out. You can't break a drug habit by

being allowed to walk in and out.

[DEFENSE ATTORNEY]: Objection.

THE COURT: That part will be sustained.

[STATE'S ATTORNEY]: He will be inside, he won't just be walking out.

[DEFENSE ATTORNEY]: Objection, Your Honor.

THE COURT: Sustained."

That argument amounted to testimony concerning the security of the rehabilitation service which does not appear in the record. Despite the court's sustaining an objection, the prosecutor persisted in the argument. Once again, we disagree with the State's contention that the defendant's argument invited that response. However, we do not believe that this argument had the same prejudicial impact of the other arguments to which we have referred.

■■ ■ We thus conclude that error occurred in the admission of hearsay evidence and in the prosecution's closing argument. The issue is reduced to whether the errors were harmless. We agree that the evidence is sufficient to establish the defendant's guilt beyond a reasonable doubt, but we believe that the errors were not harmless and their cumulative effect deprived the defendant of a fair trial.

The State has cited four cases in support of its contention that the admission of the hearsay identification was harmless: *People v. Sias* (1980), 91 Ill. App. 3d 1095, 415 N.E.2d 618; *People v. Anthony* (1980), 90 Ill. App. 3d 859, 418 N.E.2d 757; *People v. Smith* (1978), 59 Ill. App. 3d 480, 375 N.E.2d 941; and *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.

Those cases, in varying forms, have expressed a general rule: hearsay identification is reversible error only when it serves as a substitute for courtroom identification or *when it is used to strengthen or corroborate a weak identification*. If, however, the testimony is merely cumulative or is *supported by a positive identification and by other corroborative circumstances* it constitutes harmless error. The State tells us that the testimony of Chester Turner provides the positive testimony of identification that supports the identifications made by the unknown persons. We are not prepared to characterize the testimony of Turner as "positive." Turner, the principal witness against the defendant, was an accomplice and a narcotics addict. The testimony of accomplices and narcotics addicts is suspect as a matter of law. He made a false statement to the police as to his own participation and in that statement he made no mention of the defendant. His explanation that he inculpated only the juveniles, but not the defendant, because the defendant was an adult does not make sense. He knew that the

defendant had brought the police to him and the juveniles. Under the circumstances, if the defendant had participated in the burglary, there was no reason for Turner not to say so.

The police officer testified that the unidentified witnesses said that they saw "four individuals running from the scene." The statement of the unidentified witnesses, if made and if true, contradicted Turner's testimony that the defendant left the premises five minutes before Turner and the two juveniles. Turner never testified that anyone fled from the scene; he said that he and the two juveniles walked back to Homer Street where they "met up with" the defendant.

Of course, we cannot ignore the most damaging evidence against the defendant which was the fact that he led the police to the place where the stolen radios were recovered. But even that evidence would not be enough unless the State had introduced the testimony of Officer Stampnick that the defendant told him that he had acted as a lookout. That testimony, it is true, was undenied, but Stampnick's testimony was not without its infirmities. First of all, the statement was oral, and it was at odds with the testimony of Turner. Stampnick testified that he arrested the defendant approximately one block from the scene of the burglary. The defendant contended in oral argument that the proof showed that the defendant was arrested four or five blocks from the scene. In response to that argument, the prosecutor told the jury that the distance was really immaterial but conceded that the defendant was "a few blocks away" when he was arrested. Stampnick made no mention in his police report that the defendant was running, that he jumped on the railroad tracks or that he hid in bushes. Last, the argument made by the defense attorney that the police made less than a diligent effort to learn the identity of the identifying witnesses was a reasonable one. By these observations we do not mean to indicate that the testimony of the police officers was inherently unbelievable, but we do believe that respectable arguments may be made against accepting it.

In three of the four cases cited by the State, *Sias, Smith* and *Coleman*, the issue centered on testimony by a police officer that the victim, *who testified and was subject to cross-examination,* made an identification. In *People v. Rogers* (1980), 81 Ill. 2d 559, 411 N.E.2d 223, the supreme court held that where a victim identifies a defendant in court, he may testify that he previously identified the defendant before trial and, therefore, a third person may also testify that the victim identified the defendant. (81 Ill. 2d at 579.) Consequently, under *Rogers*, the testimony of the police officers in *Sias, Smith* and *Coleman* was proper.

In *Anthony*, the other case cited by the State, two witnesses identified the defendant. A third identifying witness testified on a motion to suppress evidence but not at the trial. The appellate court held that the police testimony that the third witness identified the defendant was harmless error in view of the fact that two other witnesses positively identified the defendant. Apart from the fact that there are not two positive identifications in this case, we note that the holding of *Anthony* is at odds with *People v. Johnson* (1979), 68 Ill. App. 3d 836, 386 N.E.2d 642. In *Johnson*, the charge was robbery and the complaining witness testified that the robber took four $5 bills and a stack of $1 bills. He estimated the total amount to be about $40. When the defendant was arrested shortly thereafter, the police recovered $46 from under a pile of clothing which was next to the defendant. The money recovered consisted of four $5 bills and twenty-six $1 bills. One witness positively identified the defendant, but the State also introduced testimony that another person, not called to testify, identified the defendant also. The State argued that the error was harmless because of the positive identification by one witness and the other corroborative evidence of the money recovered. The appellate court refused to accept the State's argument while noting that the positive identification alone might have been sufficient to convince the jury of the defendant's guilt. The court also held that the corroborative circumstance was not so overwhelming as to ameliorate the effect of the error in the introduction of the hearsay identification and the accentuation of the error when the prosecutor referred to the hearsay identification in his closing argument. 68 Ill. App. 3d at 842-43.

We believe that a case cited by the defendant, *People v. Lopez* (1987), 152 Ill. App. 3d 667, 504 N.E.2d 862, is much in point. In *Lopez*, the defendant was convicted of murder. A tavern owner, who knew the defendant, testified to an altercation between the deceased and the defendant in the witness' tavern. Another person, a woman, witnessed the altercation and identified the defendant as a participant. She testified that several hours later she saw the defendant shoot the victim to death in the tavern and then flee. She said that the defendant was wearing a sleeveless yellow tee-shirt and blue pants. A third witness, another customer, saw a man, wearing a yellow colored tee-shirt and blue pants, leave the tavern after the shooting. A fourth witness, a 14-year-old boy, testified that he saw the defendant enter a tavern with a gun, that he heard gunshots one minute later and that he saw the defendant leave with a gun in his hand and get into a brown Chevrolet Monte Carlo with a two-tone roof.

Police officers responding to a call of a tavern shooting stopped a

brown Chevrolet Monte Carlo with a two-tone roof which the defendant was driving. He was wearing a sleeveless yellow tee-shirt and blue pants. Sometime later the defendant was brought back to the tavern by the police in a squadrol. One officer asked an unidentified woman to look inside the squadrol. After looking inside, the woman screamed, "That's him, that's him there." Later a number of people ran out of the tavern and also started screaming, "That's him, that's him." This court held that the evidence that the defendant was identified by unknown persons outside the tavern was prejudicial error. The court also held that prejudicial error also occurred during the State's closing argument when the prosecution referred to the hearsay identification outside the tavern. The appellate court reversed the conviction and remanded for a new trial. In response to the State's argument that the error was harmless, the court made this observation pertinent in this case:

> "Regardless of a defendant's guilt or innocence, he is constitutionally entitled to a fair and impartial trial [citation]; here, defendant did not receive one." 152 Ill. App. 3d at 682.

In our judgment, the evidence of guilt was even stronger in *Lopez* than is the evidence of guilt in this case; it is also our judgment that the defendant in this case did not receive a fair and impartial trial.

The defendant has made other assignments of error including the claim that the court erred in denying him the right to file a motion to quash the arrest and suppress evidence or, alternatively, that his counsel provided ineffective assistance in failing to make a timely motion to quash the arrest and suppress the evidence. The defendant also contends that the State failed to prove beyond a reasonable doubt the factors required for Class X sentencing. Since this case is being remanded for a new trial, we need not consider these assignments of error.

For these reasons, the judgment of the circuit court is reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

LaPORTA, P.J., concurs.

JUSTICE RAKOWSKI, dissenting:

I do not agree that the State committed reversible error when it introduced hearsay identification evidence and referred to that evidence in closing argument. Neither the cases cited by the majority nor the circumstances of this case support overturning an otherwise proper conviction because of the introduction of improper hearsay

identification when the defendant confessed to the crime and his identification was not an issue at trial.

At trial, the State presented four witnesses: Johnson's adult accomplice, Chester Turner; the victim, Carlo Farino; and arresting officers Stampnick and Ustaszewski. Turner testified about the burglary committed with Johnson and two juveniles. Farino identified items taken from his home.

Officers Stampnick and Ustaszewski testified that they arrested Johnson after they responded to a call about a break-in at the victim's home. According to Stampnick, several male Hispanics came up to the police car and described four individuals whom they had observed running from the scene. According to Ustaszewski these witnesses had seen the four individuals break into a building. Both officers stated that the witnesses described the four alleged perpetrators. Shortly afterwards, when the officers observed Johnson jumping from nearby railroad tracks and hiding in some bushes, they arrested him.

The officers then took Johnson back to the crime scene, where the witnesses identified him. According to Ustaszewski, there were five to seven of these witnesses, but none of them would give his name to the police.

The officers testified further that Stampnick gave Johnson his *Miranda* rights. Afterwards, Johnson admitted acting as a lookout for the break-in. He then led the police to the house where Turner and the juveniles were waiting.

In its closing argument, the State referred once again to the unknown witnesses, their identification of Johnson, and their refusal to testify.

On appeal Johnson contends that the police testimony about the identifications made by unknown witnesses at the crime scene was hearsay and reversible error and this error was compounded when the State referred to the identifications in closing argument.

When police testify about conversations with witnesses during an investigation, the State may introduce the fact of the conversation to show police investigative procedures but may not introduce the substance of the conversation. (*Gacho*, 122 Ill. 2d at 247-49.) I agree with the majority that the testimony here went beyond this permissible limit and thus constitutes error.

Unlike the majority, however, I believe the error was a harmless one, that is, a "technical violation of a rule of evidence not considered a sufficient basis for reversal because the admission or exclusion did not affect a substantial right of a party." (*People v. Demeron* (1987), 153 Ill. App. 3d 440, 446, 505 N.E.2d 1222.) This kind of error may be

disregarded. (107 Ill. 2d R. 615(a).) One test for harmless error is "whether the evidence is cumulative or merely duplicates properly admitted evidence." (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, 429 N.E.2d 526.) When the hearsay involves identification, the error is harmless unless "it was a substitute for courtroom identification or used to strengthen or corroborate a weak identification." *Lopez* (1987), 152 Ill. App. 3d at 676.

The majority cites *Lopez* as a case on point. While I agree that *Lopez* is a correct statement of the law, it can easily be distinguished on its facts.

First, in *Lopez* identification was an issue. While the defendant did not testify, his opening argument suggested a "modified alibi defense" that he was in another tavern at the time of the shooting. *Lopez*, 152 Ill. App. 3d at 672.

Second, the hearsay identification in *Lopez* was used to "strengthen or corroborate a weak identification." (*Lopez*, 152 Ill. App. 3d at 676.) The court reasoned:

> "[W]e are not convinced that the jury would have found [the court witnesses'] identification of defendant to be as strong, as the State contends [*sic*], in the absence of the State's introduction and repeated exploitation of the [hearsay] squadrol identifications. At trial, it was disputed whether [one court witness] had told the police she was 'pretty sure' but not positive about her identification of defendant, and that she was hysterical after the shooting. The record also discloses that [another court witness] only saw defendant for approximately 10 seconds when he allegedly entered and left the tavern. In closing and rebuttal arguments, the State specifically stated that the [hearsay] identifications corroborated [these court witnesses'] identifications of defendant as the shooter." *Lopez*, 152 Ill. App. 3d at 676-77.

In this case, by contrast, identification is simply not at issue. The hearsay witnesses merely indicated that Johnson had fled from the scene with three others. Even if these witnesses had appeared in court, they could do no more than place Johnson at the vicinity of the crime. The most important evidence against Johnson was his own confession to the police and his action in leading the police to a place where the three other burglars were waiting. Johnson's specific role in the burglary was at issue; his identity as a person on the scene was not.

Since the hearsay "merely duplicat[ed] properly admitted evidence" (*Wilkerson*, 87 Ill. 2d at 157) and did not "substitute for courtroom identification" or "strengthen or corroborate a weak identifica-

tion" (*Lopez*, 152 Ill. App. 3d at 676), it was harmless. The State's reintroduction of the hearsay identification in closing was also harmless unless the result of the trial "might have been otherwise had the remarks not been made." (*People v. Love* (1985), 139 Ill. App. 3d 104, 115, 486 N.E.2d 1337.) Again, since identification was not the issue, this brief closing reference to identification evidence which should have been excluded at trial was not reversible error.

I would affirm.