THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHNNY PHILLIPS, Defendant-Appellant.

First District (6th Division)   No. 1—91—0100

Opinion filed March 20, 1992.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Johnny Phillips, a 17-year-old high school student, was convicted of armed robbery in a jury trial. Phillips appeals, contending: (1) his counsel elicited prejudicial information from a State witness and therefore he was denied effective assistance of counsel; (2) the jury was improperly instructed about the reason for the State's failure to seek a search warrant on defendant's home; and (3) the trial judge relied on incorrect information and sentenced defendant to an excessive sentence of 15 years in prison.

At defendant's trial, complainant Linda Jepsen testified that on November 15, 1989, as she was pulling into the alley behind her home she noticed a car a block away in the alley. The car was stopped there for a few minutes and then backed out and pulled away.

She testified that she then activated her electric door opener, backed her car into her garage and parked. She climbed out of the car, picking up her purse and athletic bag, and then leaned back to unbuckle her baby's seat belt. As she did so, she realized a man was standing in the alley staring at her from about 18 to 20 feet away. She testified that he had on a red baseball cap, red starter jacket, black pants and gym shoes. She testified that she later told police the offender was a black male, whom she estimated was approximately 25 years old, 5 feet 9 inches tall and 175 to 180 pounds. Jepsen identified that person at trial as defendant.

She testified that she froze initially and then started yelling at the man not to come into the garage. She pressed the automatic door close button but the man looked from side to side and then entered the garage holding a silver and black gun. At trial she identified a .177 caliber spring-operated BB and pellet gun as the gun in question.

Jepsen testified that the man said "give me your purse" and then spun her around and pulled her purse from her shoulder. She testified that he immediately ran from the garage, sliding out under the garage door on his stomach as it was closing. When he was outside the door she saw the feet and part of the leg of a second person. She testified that after the door closed, she looked through a hole in the wall and saw him and another male person run eastbound down the alley.

Jepsen testified that she took her infant daughter inside and called police. She testified that the whole occurrence took about 60 seconds. She first identified defendant 10 weeks later on January 24, 1990, when police showed her an array of photos. She subsequently identified defendant in a lineup on February 2, 1990.

She testified that at the time of the robbery she had $375 and several credit cards in her purse. She testified that she identified a gun, later recovered from her alley, as the gun the offender used. She stated that her purse was recovered but the money and credit cards were missing. She testified that $760 in charges were made on her Amoco credit card the night of the robbery.

Jepsen testified that police helped her put together a composite drawing of the offender but that she was not happy with the composite. "I told them it was similar but there were irregularities." She testified that "for the most part" she had a good idea about the ages of students because of her job as a secretary at a high school.

Police officer Thomas Dvonch testified that on November 15 he responded to the robbery call and interviewed Jepsen, who described the offender as a "male black, approximately 5' 9", 175 pounds, and wearing a red baseball cap and a red Bulls starter jacket." She told Dvonch that the robbery took "just seconds." She told him the offender wore dark pants and had a large automatic handgun. He testified that he could find no fingerprints on the car. He testified that on November 16, 1985, he recovered an automatic pistol pellet gun found by a neighbor in the alley adjacent to the victim's residence.

William Rice, the victim's neighbor, testified that he discovered the gun by a bush near the place where the robbery occurred and turned it over to police.

Detective Leonard Jorgenson testified that the victim's purse was found by a garbage truck driver from the Chicago Department of Streets and Sanitation and turned over by him to police. He testified that he returned the purse to the victim and also showed her the gun, which she identified as the gun used in the robbery.

Detective Kalita testified that he spoke with Jepsen the evening of the robbery and helped her prepare a composite drawing of the offender. He testified that the victim looked through several mug books but was unable to identify the offender from the books.

Kalita testified that he went to one of the gas stations where a charge was made on the victim's Amoco card and learned the car license number of one of the persons using the card. He learned that the license plate was registered to Adel Curry in Chicago. Without objection, he testified that he spoke with an unnamed person who told him Curry and the defendant were related.

He testified that, as part of his investigation, he met Carl Curry at the police station and Curry appeared in a lineup viewed by the victim, but she did not identify Curry or anyone else in the lineup. Then, the following colloquy occurred between the prosecutor and Kalita:

"[PROSECUTOR]: After the lineup was over did you have an opportunity to speak with Carl Curry?

[KALITA]: Yes, I did.

[PROSECUTOR]: Without going into the substance of your conversation with Carl Curry, what did you do next, pursuant to your investigation?

[KALITA]: I obtained a photo of Johnny Phillips."

Kalita testified that he took the photo of defendant, Phillips, placed it with five other photographs and on January 24 showed it to the victim, who identified defendant as the offender. Kalita testified that he ar-

rested the defendant February 2 and the victim identified defendant in a lineup.

On cross-examination defense counsel asked Kalita whether he spoke to Carl Curry at the Oak Park police station and advised him that he was under arrest. The following colloquy then occurred:

"[DEFENSE COUNSEL]: So, then he knew he was a suspect at that time and he had a right to have an attorney?

[PROSECUTOR]: I'm sorry, Judge, I'm going to object. Did counsel ask—I don't believe the question is clear. Was he advised of his rights at that time. I believe he was not under arrest.

[THE COURT]: I want to know how this is relevant? [*sic*]

[DEFENSE COUNSEL]: It is in the police report, this is how this Officer made this investigation, this is how this Officer decided to come and investigate Mr. Phillips. This is how he got his information to find out whether or not to investigate Mr. Phillips. I think it is relevant.

[PROSECUTOR]: Your Honor, it is hearsay.

[THE COURT]: I will allow you to ask a few more questions and then you proceed on to something else.

[DEFENSE COUNSEL]: Fine, Judge. Did Mr. Curry tell you he robbed Mrs. Jepsen?

[KALITA]: No, he didn't.

[DEFENSE COUNSEL]: Did he tell you he thought he knew who might have robbed Mrs. Jepsen?

[KALITA]: Yes.

[DEFENSE COUNSEL]: Who did he tell you he thought might have robbed Mrs. Jepsen?

[KALITA]: Johnny Phillips.

[DEFENSE COUNSEL]: Did he tell you why he thought Johnny Phillips could have robbed Mrs. Jepsen?

[KALITA]: Because he and Johnny Phillips had been arrested in Chicago for robbery.

[DEFENSE COUNSEL]: Okay.

[KALITA]: And he felt that since this was a robbery I was investigating that Johnny Phillips might have done it.

[DEFENSE COUNSEL]: Did he tell you what kind of robbery that was in Chicago?

[PROSECUTOR]: I'm going to object to this.

[THE COURT]: Okay, Side bar.

(The following proceedings were had out of the presence of the jury.)

[THE COURT]: You know if the State's Attorney had asked those questions, it would have been clearly reversible error."

A short time later defense counsel questioned whether Kalita put the defendant in a lineup, asking: "Then did you find out Johnny Phillips was incarcerated and then bring him down for a lineup?" Kalita stated that he eventually did just that.

Defense counsel repeated the question two times a few minutes later, asking whether Johnny Phillips was in custody at the time he was brought in and arrested for the armed robbery. Later defense counsel asked, "Did you check to see whether Mr. Phillips was ever arrested for this kind of crime?" but the prosecutor objected and the objection was sustained.

At the close of the State's case, defendant moved for a directed verdict which was denied. The defense attempted to call Carl Curry as a witness but Curry, who was in prison at the time, refused to testify and told his counsel that he would assert his fifth amendment right to remain silent.

Defendant's mother, Ruby Phillips, defendant's former girl friend, Jennifer Hill, defendant's grandfather, Miller Gardner, defendant's sister, Shekita Phillips, and a friend of Hill's, Denise Cardine, all testified on defendant's behalf, providing alibi testimony. They accounted for defendant's whereabouts that evening by testifying he had come home early from school because he had a cold and had not left home that evening. As part of her testimony, Hill testified that the paramedics were called for her that evening after she tripped over a table at defendant's home. She was nine months pregnant at the time.

Defendant testified that on November 15, 1989, he went to school for a half of a day and then went to Hill's home for about two hours. He testified that around 2 p.m. he walked home and remained there the rest of the night. He denied ever owning a red starter jacket and denied robbing the victim or being in Oak Park on November 15. He denied holding or owning the gun found in the alley.

When asked whether he had ever robbed someone he stated: "Yes, I had an incident before this. They said before they brought this charge, I had an incident of robbing somebody where I had done something foolish and stupid. *** I had snatched this lady's purse. And it was wrong. That's the only thing I had ever did in my life, was snatched a lady's purse. I think the Lord let me learn."

He stated that he weighed about 145 pounds and had never weighed 180 pounds in his life. He stated that he was 5 feet 6 inches or 5 feet 7 inches.

In rebuttal the State submitted for the jury's consideration a certified copy of a statement indicating defendant was convicted of robbery on May 22, 1990, and sentenced to two years' felony probation. The State also called Rich Lopez, a records analyst for the Chicago fire department, who testified that he could find no record of an ambulance ever being called to defendant's home to respond to a call about a pregnant girl having fallen.

After closing arguments, the jury found defendant guilty of armed robbery, and the trial judge sentenced him to 15 years' incarceration. Defendant appeals his conviction and sentence.

Initially we consider defendant's contention that he was denied effective assistance of counsel when his trial counsel elicited hearsay testimony about a suspect named Carl Curry's statement to the police that defendant was the perpetrator and that Curry had committed a separate prior robbery with defendant. Defendant contends this testimony elicited by defense counsel was especially prejudicial because the State's sole evidence against defendant was complainant's identification testimony that she first identified Johnny Phillips in a photo array 10 weeks after the crime and her description of the offender differed from defendant's appearance.

The standard of review for an ineffective assistance of counsel claim was enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. The *Strickland* standard was adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

In *Strickland* the court stated that a defendant must show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness and that the performance prejudiced the defense of the case. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Defendant contends that his counsel committed a flagrant error which resulted in denying him effective assistance of counsel when counsel elicited hearsay testimony from Kalita with regard to defendant's prior criminal record and Curry's identification of defendant as the likely armed robber.

Defendant notes that the prosecutor admonished Kalita not to reveal the substance of the statement by Carl Curry during his direct examination. But then, in cross-examination of Kalita, defense counsel elicited hearsay statements from Curry about defendant's likely connection with the Oak Park robbery and another robbery he and defendant committed in Chicago. Defendant contends that defense counsel compounded the error by continuing to refer to the "Chicago robbery" as if

it were a fact instead of an allegation by Curry elicited through hearsay testimony. In addition, defendant notes that defense counsel made no objection when the State elicited testimony from Kalita that defendant was related to the person who owned the car involved when the victim's Amoco card was used to charge several hundred dollars worth of purchases on the night of the robbery.

Defendant cites three United States Supreme Court cases and an Illinois Appellate Court case to support his position. *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620; *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056; *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714; *People v. Johnson* (1990), 202 Ill. App. 3d 417, 559 N.E.2d 1041.

Defendant contends that the trial judge's statements and the case law support his argument that if such evidence had been elicited by the State it would have been reversible error. Defendant rejects the State's contention that defense counsel's conduct could be categorized as tactical in nature. Counsel should have known that Carl Curry could not be called as a witness because he had the right and probably would invoke his fifth amendment privilege against self-incriminatory testimony. Counsel should have known that he could not elicit testimony about Curry's past criminal record from Kalita because of hearsay restrictions.

From defense counsel's comments in sidebars it is clear that defense counsel had not talked to Curry or his counsel and did not know how Kalita obtained Johnny Phillips' name as a suspect in the Jepsen robbery.

In support of his position that where defense counsel affirmatively damages defendant's case the trial judge should grant a new trial, defendant cites *People v. De Simone* (1956), 9 Ill. 2d 522, 138 N.E.2d 556 (ineffective assistance of counsel where counsel introduced evidence that his clients were evil men and hardened criminals who had committed numerous burglaries previously), *People v. Salgado* (1990), 200 Ill. App. 3d 550, 558 N.E.2d 271 (new trial granted where defense counsel elicits damaging confession from defendant), and *People v. Lemcke* (1980), 80 Ill. App. 3d 298, 399 N.E.2d 677 (new trial granted where defense counsel tendered instruction to the jury which allowed the jury to convict on the basis of an intent not charged in the information).

Defendant likens his case to *People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217, where the court found defense counsel's representation ineffective after counsel failed to object to damaging hearsay testimony, offered opinions, summarized conversations without foundation and volunteered incriminating information about other drug transactions in which defendant was involved.

Defendant rejects any contention that eliciting the hearsay evidence by his trial counsel might have been harmless error. Defendant argues that the only other evidence linking defendant to this crime was the victim's eyewitness identification. He argues that the United States Supreme Court has noted the limitations of eyewitness identifications. *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (The vagaries of eyewitness identification are well known).

In addition, defendant contends the victim's testimony here was based on "just seconds" or "sixty seconds" observation of the offender. Her initial identification of defendant came 10 weeks after the incident and her physical description of the offender differed substantially from the defendant's actual description.

Defendant contends that this conduct places defense counsel's representation of him squarely within the definition given in *Strickland* of a "reasonable probability that the outcome would have been different but for counsel's conduct." The court defined reasonable probability as "a probability sufficient to undermine the confidence in the outcome." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) Defendant argues that the ultimate focus must be on the fundamental fairness of the proceeding (*People v. Wilson* (1986), 149 Ill. App. 3d 1075, 1078, 501 N.E.2d 863), and that when viewed by this standard, defense counsel's actions could not be deemed effective representation.

Defendant also contends his counsel committed prejudicial error by failing to object to the State's amendment of its witness list to include the name "Rich Lopez" without a description of his probable testimony. Defendant contends that under Supreme Court Rule 412(a) the State is required not only to identify witnesses it intends to call in rebuttal but must include a "specific statement as to the substance of the testimony such witnesses will give at the trial of the cause." 134 Ill. 2d R. 412(a).

Defendant contends that his counsel's failure to object at trial to the State's listing of Lopez' name on the witness list, without more, effectively waived his right to object on appeal to the State's failure to comply with Rule 412. (*People v. Nelson* (1980), 92 Ill. App. 3d 35, 415 N.E.2d 688.) Defendant notes that his counsel's only comment after the State's witness list was amended was: "That's fine, I have no problem with that."

The State contends that defense counsel acted competently and therefore defendant is not entitled to a new trial. The essence of the State's argument is that "defendant was not deprived of effective assistance of counsel because his trial counsel's conduct fell within the wide range of reasonable professional assistance" and defense counsel's conduct "provided defendant with a fair trial."

The State argues that defendant must show actual incompetence on the part of the attorney. (*Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) There must be a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Albanese*, 104 Ill. 2d at 525.

The State also cites two other cases in support of its argument, *People v. Puente* (1984), 125 Ill. App. 3d 152, 158, 465 N.E.2d 682 (defendant may not rely on speculation as to the outcome of the case had the representation been of higher quality), and *United States v. Cronic* (1984), 466 U.S. 648, 656 n.19, 80 L. Ed. 2d 657, 666 n.19, 104 S. Ct. 2039, 2045 n.19 (If no *bona fide* defense exists, defense counsel cannot create one but at trial still must hold the prosecution to its heavy burden of proof beyond a reasonable doubt).

The State contends that defense counsel's failure to object to the testimony of Lopez did not prejudice defendant because defense counsel had an opportunity and did cross-examine Lopez and challenged the assertions he made. The State denies that it withheld Lopez' name from its list of possible witnesses, noting that it amended its witness list on the day the jury was picked and potential jurors were asked if they knew Lopez.

As to the hearsay testimony elicited from Kalita, the State argues that the counsel's actions were "sound trial strategy." The State contends that defense counsel was trying to establish reasonable doubt as to Curry's involvement in the Oak Park armed robbery. The State also argues that the record establishes that defense counsel's strategy was to discredit the implication by Curry of defendant's participation or at least show Curry was involved in the robbery and therefore imply a reason why Curry might attempt to implicate defendant.

The State argues that defense counsel indicated his intent to call Curry as a witness and therefore could have asked Curry why he implicated defendant.

The State distinguishes *Bruton* on its facts because it involved a co-defendant's incriminating pretrial confession, whereas this case involved a single defendant. The State distinguishes *Cruz* and *Lee* for the same reason. The State distinguishes *Johnson* by arguing that the *Johnson* court found reversible error when the trial court permitted the use of hearsay identification to strengthen or corroborate a weak identification of the defendant. The State argues that no hearsay identification is involved here.

The State contends that even if defense counsel's action was error, defendant has failed to show the action resulted in substantial prejudice that would have affected the outcome of his trial. The State argues that

defense counsel made a strong opening statement, a strong closing argument, adequate cross-examination of State witnesses and timely objections to witness testimony.

The State challenges defendant's contention that the victim's identification of defendant was weak, noting that the garage and alley were well lit, the victim faced defendant for up to one minute and was estimating height and weight based on the offender wearing a heavy jacket. The State argues that few persons are capable of making accurate height and weight estimates and therefore discrepancies alone are not decisive factors. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.

We disagree with the State's characterization of defense counsel's actions as "sound trial strategy." The trial court recognized the problem of introducing the hearsay testimony at the time the testimony was given and stated so in the sidebar. The prosecutor also recognized that improper testimony was being admitted when he objected to the hearsay and its relevance several times during the course of defense counsel's cross-examination.

Because the hearsay testimony from Kalita was devastating to defendant's case, we find that a mistrial would have been proper. Since defense counsel failed to move for a mistrial, we find his conduct fell below the permissible standards of effective assistance as articulated in *Strickland* and *Albanese*.

Defendant also asks us to consider whether the jury was improperly instructed on the question of the police's failure to search defendant's apartment and whether defendant's sentence was excessive. Because we are reversing and remanding this cause for a new trial, we need not decide these issues.

For the foregoing reasons, the defendant's conviction for armed robbery is reversed and his sentence vacated and the case is remanded for a new trial.

Reversed and remanded.

EGAN, P.J., and RAKOWSKI, J., concur.