THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOBBY MOORE, Defendant-Appellant.

First District (6th Division)   No. 1—04—0085

Opinion filed February 25, 2005.

Michael J. Pelletier and Sarah Curry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kathleen Warnick, Sally Dilgart, and Denise Richards, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial defendant, Bobby Moore, was found guilty of burglary and sentenced to eight years in prison. Defendant appeals his conviction arguing the following: (1) the prosecution made improper and prejudicial comments in closing argument; (2) he was denied effective assistance of counsel; (3) the compulsory extraction of DNA as required by section 5—4—3 of the Unified Code of Corrections (730 ILCS 5/5—4—3 (West 2002)) violates his fourth amendment right to be free from unreasonable search and seizure; (4) the State failed to prove him guilty beyond a reasonable doubt; (5) the trial court failed to properly admonish him pursuant to Supreme Court Rule 604(a) (188 Ill. 2d R. 604(a)); and (6) his sentence must be vacated because the judge failed to advise him of his right to an examination for substance abuse treatment and failed to consider drug rehabilitative treatment before sentencing.

## BACKGROUND

On May 8, 2003, in the vicinity of 5600 West Madison Street in the

City of Chicago, defendant was observed sitting in the victim's car and then walking away from the car with a box or bag of audio cassettes and the victim's camera bag. Defendant was detained a short distance away by the victim, Eugene Sample, and his friend, Christopher Rowland. After a jury trial defendant was found guilty of burglary and sentenced to eight years in the Illinois Department of Corrections. The motion for new trial and the motion to reconsider sentence were both denied. This appeal followed.

## CLOSING ARGUMENT

■ Defendant contends the closing argument by the State that the jurors should convict him in order to prevent their insurance rates from increasing deprived him of his due process right to a fair trial. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. It is well established that the prosecutor is given wide latitude in closing argument and may argue to the jury facts and reasonable inferences from the evidence. *People v. Enis*, 163 Ill. 2d 367 (1994). The trial court has the discretion to determine the proper character, scope, and prejudicial effect of closing arguments. *People v. Cloutier*, 156 Ill. 2d 483, 507 (1993). Improper remarks warrant reversal only where they result in substantial prejudice to the defendant, considering the content and context of the language, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. *People v. Peeples*, 155 Ill. 2d 422, 482-83 (1993).

Defendant contends the following closing argument by the State was calculated solely to prejudice and inflame the passions of the jury:

"After you hear all the arguments and you go back there, you may be tempted to say, 'what is the big deal, he took a camera worth a couple of hundred bucks?' It is a big deal because every three months or six months when you get that insurance bill for your car, or multiple cars if you have a couple or more, and your jaw almost drops because of how high it is, it is that high because of burglars like the defendant going into cars and stealing your video camera, taking your stereo, taking the change you have for the tollway. All of that make[s] the insurance rates go up. Who pays for that? The people that pay their insurance bill with their money that they get from work, not from stealing stuff and selling it, people that go to work every day. So, you have the opportunity to make a difference here. It is time for you to do what you can to keep your insurance bill down, and it is time for you to tell the defendant in this case that it is not okay to take cookies from the cookie jar, it is not okay to take cameras from Camrys."

While a prosecutor may discuss the evil of crime and exhort the jury to fearlessly administer the law, the prosecutor may not make

inflammatory appeals to the fears and passions of the jury. *People v. Gutirrez*, 205 Ill. App. 3d 231, 263 (1990). In the instant case, the prosecutor went beyond discussing the evil of crime. Rather, the prosecutor argued that because of burglars like defendant, insurance rates go up. It is improper for the prosecution to direct the jury's attention away from the elements of the crime by commenting on issues irrelevant to the question of guilt or innocence. *People v. Fluker*, 318 Ill. App. 3d 193 (2000) (finding reversible error where prosecutor's remarks improperly directed jury's attention from identification of shooter to disapproval of gangs).

The prosecutor argued that the jury should find defendant guilty, not because the evidence proved him guilty beyond a reasonable doubt, but because "It is time for you to do what you can to keep your insurance bill down ***." That argument failed to address the question of guilt or innocence and improperly suggested that by his conduct, defendant was responsible for what the jurors paid for insurance. See *People v. Terry*, 312 Ill. App. 3d 984, 993-94 (2000) (argument that defendant was generally responsible for drug dealing was inflammatory reversible error by prosecution). It is improper for the prosecutor to personalize in this manner during closing argument. See *People v. Johnson*, 208 Ill. 2d 53, 78 (2003), quoting *People v. Martin*, 29 Ill. App. 3d 825, 829 (1975) (" 'The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law' "). The prosecutor improperly advised the jurors to convict defendant in order to bring down their own insurance premiums and to protect insurance rates generally, rather than to deliberate on defendant's guilt or innocence based on the evidence. Those remarks served no purpose other than to appeal to the jurors' fears, prejudice defendant, and inflame the passions of the jury. *People v. Ford*, 113 Ill. App. 3d 659, 662-63 (1983) (appealing to jurors' fears about drug dealers has been found to be reversible error).

Moreover, there was no mention of auto insurance during trial. The prosecutor's argument was not based on the evidence. There was no evidence that the victim, Sample, had car insurance or made a claim with his insurance company. There was no evidence that if Sample made an insurance claim, insurance premiums in general would rise. These comments by the prosecution were improper as there was no evidence at trial to support them. *People v. Henderson*, 142 Ill. 2d 258, 323-26 (1990). A closing argument is improper if it is not based on relevant evidence. *People v. Bell*, 152 Ill. App. 3d 1007, 1018 (1987). These comments were an improper attempt by the

prosecutor to further persuade the jury to find defendant guilty, not based on the facts, but based on irrelevant speculation. The comments served no purpose other than to prejudice defendant and undermine defendant's right to a fair trial.

We note defense counsel failed to object to any of the improper closing argument. Failure to object during trial and failure to preserve the issue in a posttrial motion waives the issue. *People v. Enoch*, 122 Ill. 2d 176 (1988). However, we will consider this issue, which otherwise would be waived, because defendant contends the failure to object during trial and to preserve the issue in a posttrial motion was due to ineffective assistance of counsel. *People v. Eddmonds*, 101 Ill. 2d 44, 64-65 (1984). We next address the issue of ineffective assistance in the context of the closing argument, as well as the cross-examination by defense counsel of two key witnesses for the prosecution.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Defendant contends trial counsel rendered ineffective assistance by failing to object to the prosecution's closing argument, by failing to preserve the issue regarding closing argument in a posttrial motion, and by eliciting incriminating hearsay evidence during cross-examination of two key prosecution witnesses. The United States and Illinois Constitutions guarantee the right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. The standard of review for an ineffective assistance of counsel claim was enunciated in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The *Strickland* standard was adopted by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, a defendant claiming ineffective assistance of counsel must demonstrate that counsel's performance fell below an objective standard of reasonableness and the performance prejudiced the defense of the case. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Prejudice exists where there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

We note the prejudice component of *Strickland* entails more than an "outcome-determinative test"; rather, the defendant must show that counsel's deficient performance rendered the trial result unreliable or rendered the proceeding fundamentally unfair. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). Further, a defendant must

overcome the presumption that counsel's challenged action was trial strategy. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. In judging counsel's performance, the court must look to the totality of the circumstances. *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. "[T]he general rule is that courts will not disturb a conviction on the basis of ineffective assistance of counsel unless the totality of counsel's conduct indicates his actual incompetence." *People v. Bell*, 152 Ill. App. 3d 1007, 1011 (1987) (cumulative effect of defense counsel's errors including failure to object to closing argument not based on the evidence demonstrated ineffective assistance which was sufficiently prejudicial to require new trial); *People v. McMillin*, 352 Ill. App. 3d 336 (2004) (failure to object to distortion of evidence in closing argument together with defense counsel interjecting evidence of his client's prior criminal record was ineffective assistance of counsel which undermined confidence in the outcome of case thereby depriving defendant of fair trial).

For the reasons previously discussed, it was improper for the prosecutor in closing argument to focus repeatedly on the issue of insurance rates and advise the jury that convicting the defendant was a way for jurors to protect their insurance rates from increasing. Defense counsel's failure to object to this argument demonstrated ineffective assistance of counsel and cannot be excused as mere trial strategy. *People v. Anderson*, 266 Ill. App. 3d 947, 956-57 (1994); *People v. Rogers*, 172 Ill. App. 3d 471, 479 (1988) (defense counsel's failure to object to prosecutor's improper argument constituted ineffective assistance which deprived defendant of a fair trial). In the instant case, considering the content and context of the improper argument, its lack of any relationship to the evidence, and its effect on defendant's right to a fair and impartial trial, we conclude that defense counsel's deficient performance in failing to object to the improper argument satisfied the prejudice component of the *Strickland* test. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Defendant further contends trial counsel rendered ineffective assistance by eliciting incriminating hearsay during cross-examination of two of the prosecution's key witnesses. A defendant is guaranteed the right to the effective assistance of counsel under the United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. The sixth amendment's confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. Hearsay is testimony of an out-of-court statement offered for the truth of the matter asserted. *People v. Tenney*, 205 Ill. 2d 411, 432-33 (2002).

During defense counsel's cross-examination he elicited testimony from two prosecution witnesses that people in a crowd near the crime scene provided information that incriminated the defendant. The people from the crowd never testified. Specifically, defendant challenges the testimony of Christopher Rowland and Eugene Sample, elicited by defense counsel on cross-examination, that defendant dropped the camera bag during a struggle and that someone in the crowd told them that an individual who was with defendant had taken the camera bag. The information provided by these unknown people from the crowd explained why the camera bag that defendant was alleged to have taken was not recovered from defendant or from the area where defendant was arrested.

Without that explanation for the missing camera bag, the facts supported the argument that Rowland and Sample, who identified defendant as having burglarized Sample's car, were mistaken because defendant was neither in possession of the camera bag when he was arrested, nor was the camera bag found anywhere in the area. The only physical evidence that would have connected defendant to Sample's car, the camera bag, was not recovered from defendant or the scene of defendant's detention. The record reflects no reasonable explanation for its absence other than the inadmissible hearsay provided by the people in the crowd and elicited by defense counsel during his cross-examination of Rowland and Sample.

Christopher Rowland testified that he saw defendant inside Eugene Sample's car; however, Rowland was unable to describe what happened to the camera bag. During cross-examination of Rowland, defense counsel elicited the explanation for the missing camera by interjecting hearsay information provided by unknown persons in the crowd near the crime scene as follows:

"DEFENSE COUNSEL: Now, did you indicate to the police what happened to that bag?

MR. ROWLAND: Yes.

DEFENSE COUNSEL: What did you tell the police?

MR. ROWLAND: Well, the crowd that was around there, a couple of people told us that some other guy that was supposed to be with him, I don't know the validity of that, but they said that he came along and he picked it up.

DEFENSE COUNSEL: Let me get this straight. Is it your testimony that somebody came along and picked that bag up while you were struggling with this man?

MR. ROWLAND: Yes.

\* \* \*

DEFENSE COUNSEL: So it's your testimony that you found out

later on from somebody in the crowd that some[one] came and took that [bag]?

MR. ROWLAND: Yes. Because when the police showed up, we were looking around for the bag, we was asking who ran off with the bag and no one said anything at that time. And after the police left, everybody wants to be a witness.

DEFENSE COUNSEL: Okay. So these people told you that somebody came and ran off with the bag?

MR. ROWLAND: Yes.

DEFENSE COUNSEL: This person, do you remember seeing him around there?

THE COURT: Side bar.

(WHEREUPON, the following proceedings were at side bar, outside the hearing of the jury.)

THE COURT: All Right. We are deep within the realm of hearsay. The State is not objecting, but this is all hearsay. And I'm really concerned about how far this is going to go and where this jury is going to. I think this is supposed to go, because it's coming in without objection. What are you doing?

THE STATE: I want it in.

THE COURT: If it's not objected to, then I guess it's fine with me.

DEFENSE COUNSEL: All right.

(WHEREUPON, the following proceedings were had in open court, in the presence and the hearing of the jury.)

THE COURT: You may continue your cross-examination.

DEFENSE COUNSEL: Thank you, your Honor.

DEFENSE COUNSEL: Mr. Rowland, you indicate that the crowd had told you, just to pick up where we left off—

MR. ROWLAND: Okay.

DEFENSE COUNSEL: Somebody in the crowd told you that somebody ran off with this camera that you had lost sight of?

MR. ROWLAND: Yes.

DEFENSE COUNSEL: Okay. And my question to you is, did you remember once they had told you, did you remember this individual?

MR. ROWLAND: Yes, I did.

DEFENSE COUNSEL: You did? Okay. And that individual, do you recall him speaking to the police?

MR. ROWLAND: Yes. He did.

DEFENSE COUNSEL: Okay. And did you overhear the conversation?

MR. ROWLAND: Yes.

* * *

DEFENSE COUNSEL: Without telling us what the nature, the

substance of the conversation was, did that gentleman then pick up all the tapes that were on the ground, or the bag with the tapes?

MR. ROWLAND: It was on tope [*sic*] of the police car.

DEFENSE COUNSEL: All right. Did he go and take those?

MR. ROWLAND: Yes he did.

DEFENSE COUNSEL: And this was after speaking to the police, right?

MR. ROWLAND: Correct.

DEFENSE COUNSEL: And this is the man that you think ran off with the camera, right?

MR. ROWLAND: Yes. That's what the crowd told me."

Sample testified after Rowland. On cross-examination of Sample by defense counsel regarding the camera bag, defense counsel continued to elicit inadmissible hearsay:

"DEFENSE COUNSEL: And how big is that bag supposedly?

MR. SAMPLE: Oh, about this big. (Indicating).

DEFENSE COUNSEL: A foot and a half, two feet?

MR. SAMPLE: Yeah.

DEFENSE COUNSEL: Two feet?

MR. SAMPLE: Yeah.

DEFENSE COUNSEL: And how wide is it?

MR. SAMPLE: About—. (Indicating).

DEFENSE COUNSEL: So two feet long and one foot wide?

MR. SAMPLE: Yeah.

DEFENSE COUNSEL: And it's got, it has a red stripe on it?

MR. SAMPLE: Yes.

DEFENSE COUNSEL: And you lost sight of it?

MR. SAMPLE: Yes.

DEFENSE COUNSEL: Now did you learn later on how it may have, what may have happened to [the bag]?

MR. SAMPLE: Yes.

DEFENSE COUNSEL: What did you learn?

MR. SAMPLE: That the guy that took Mr. Moore's cassettes to his mother had grabbed it first—

DEFENSE COUNSEL: Okay.

MR. SAMPLE:—and walked away with it.

DEFENSE COUNSEL: And did you happen to remember seeing this gentleman?

MR. SAMPLE: I remember him coming to ask for the cassettes.

DEFENSE COUNSEL: Who did he ask?

MR. SAMPLE: He asked me and Christopher could he take his cassettes to his mother, and we said yes.

DEFENSE COUNSEL: So the guy who ran off with the camera came back and talked to you and Christopher?

MR. SAMPLE: Yes.

DEFENSE COUNSEL: Did he speak to the police as well?

MR. SAMPLE: Not that I know of. I'm not sure."

Defense counsel's cross-examination of Rowland and Sample violated defendant's right to be confronted with the witnesses against him since the people in the crowd who provided the information regarding the camera bag never testified. U.S. Const., amend. VI. As the result of defense counsel's cross-examination, Rowland and Sample both testified that members of the crowd told them another man who had been with defendant ran off with Sample's camera bag. Under further questioning by defense counsel they testified that members of the crowd told them the man who ran off with the camera bag was the same man who later came back to the scene and asked the police if he could take defendant's bag of tapes to return them to defendant's mother.

The statements from the members of the crowd elicited by defense counsel's cross-examination of Rowland and Sample were clearly hearsay statements offered for the truth of the matter asserted, namely, that the other person who took the camera bag was connected to defendant. The members of the crowd provided that connection by allegedly telling Rowland and Sample that the man who took the camera bag had been with defendant and later returned asking if he could take defendant's audio tapes to defendant's mother. The members of the crowd who allegedly provided this information were not named, never testified during trial, and were never cross-examined.

The experienced trial judge recognized defense counsel was eliciting incriminating hearsay against his own client and, as previously noted, called for a sidebar during which he expressed the following concerns:

"THE COURT: All right. We are deep within the realm of hearsay. The State is not objecting, but this is all hearsay. And I'm really concerned about how far this is going to go and where the jury is going to. I think it is supposed to go, because it's coming in without objection. What are you doing?"

When defense counsel failed to answer the question posed by the trial judge, the prosecutor said, "I want it in." The court responded, "If it's not objected to, then I guess it's fine with me." Defense counsel simply indicated: "All right." After this exchange, defense counsel continued to elicit more damaging hearsay connecting the person who took the camera bag to defendant, thereby providing an explanation for the missing evidence, which further incriminated defendant.

We reject the State's argument that defense counsel elicited during cross-examination the incriminating hearsay information as a

matter of trial strategy. The State contends the cross-examination eliciting the incriminating hearsay was sound strategy intended by defense counsel to demonstrate the fact that Rowland's and Sample's testimony regarding the missing camera bag was not credible. The fact the camera bag was missing and not recovered from defendant or the surrounding area impeached the testimony of Rowland and Sample that they observed defendant with the camera bag. The record reflects the strategy used by defense counsel was unsound where during cross-examination, rather than impeach Rowland and Sample with the missing evidence, defense counsel elicited incriminating hearsay testimony that provided the jury with an explanation for the missing camera bag. The strategy used by defense counsel was unsound because the hearsay he elicited on cross-examination connected defendant to the burglary. There is nothing reasonable about such strategy, which served to further incriminate defendant and significantly prejudiced defendant.

In *People v. Phillips*, 227 Ill. App. 3d 581 (1992), similar to the instant case, defense counsel elicited hearsay testimony from a detective that further incriminated his client, specifically that another suspect in the case told the detective that the defendant robbed the victim. The court in *Phillips* rejected the prosecution's characterization of defense counsel's cross-examination as "sound trial strategy." *Phillips*, 227 Ill. App. 3d at 590. As in the instant case, the trial judge recognized the problem of introducing the hearsay testimony and stated so in a sidebar. *Phillips*, 227 Ill. App. 3d at 584-85. The court in *Phillips* concluded as follows:

> "Because the hearsay testimony from [the detective] was devastating to defendant's case, we find that a mistrial would have been proper. Since defense counsel failed to move for a mistrial, we find his conduct fell below the permissible standards of effective assistance as articulated in *Strickland* and *Albanese*." *Phillips*, 227 Ill. App. 3d at 590.

In closing argument in the instant case, defense counsel tried to persuade the jury not to believe the hearsay testimony that he improperly elicited from Rowland and Sample regarding the crowd providing an explanation for the missing camera bag. The strategy used by defense counsel is not sound where he had to spend his closing argument trying to persuade the jury not to believe the incriminating hearsay testimony that he elicited during his cross-examination of Rowland and Sample as the result of his ineffective representation. Without the hearsay testimony, the jury had no explanation for the missing camera bag and there was no connection between defendant and the missing camera bag other than the uncorroborated testimony of Rowland and Sample.

For the reasons previously discussed, the cross-examination by defense counsel of the two key prosecution witnesses during which counsel repeatedly elicited inadmissible hearsay constituted deficient representation. However, as previously noted, the prejudice component of *Strickland* requires the defendant show the deficient representation rendered the trial result unreliable or the proceeding fundamentally unfair. *Richardson*, 189 Ill. 2d at 411.

In the instant case, the theory of defense was that the prosecution would fail to prove defendant guilty beyond a reasonable doubt. The camera bag, the only physical evidence that could connect defendant to the burglary of Sample's car, was not recovered from defendant or from the scene. The hearsay evidence incriminated defendant by providing an explanation for the missing evidence, which connected defendant to the crime. The hearsay evidence informed the jury that another man who had been with defendant grabbed the camera bag and ran away. This evidence further communicated that the man who grabbed the camera bag was connected to defendant, as this was the same man who had been with defendant and who later asked if he could take defendant's bag of audiotapes back to defendant's mother. Without the inadmissible hearsay, the testimony by Rowland and Sample that defendant was carrying Sample's camera bag would have been directly impeached by the fact that no camera bag was recovered from defendant or from the scene.

The prejudicial impact of defense counsel eliciting the incriminating hearsay is reinforced by the fact that defense counsel attempted to explain the incriminating hearsay evidence in closing argument:

"DEFENSE COUNSEL: None of these witnesses saw a camera. They tell you they saw a bag and, from a distance, they saw it had a red stripe on it, but they lose sight of this, and their explanation to the police when the police got there and they had this poor man on the ground after searching him and finding nothing, their explanation is that somebody came up and ran off with it, and they didn't see who the person was, they didn't see him take the camera. They found out about that part of their story later, supposedly when the crowd told them. By the way, a crowd gathered, so we know there were a lot of people in the mall at that time because where did the crowd come from? They say that this gentleman later on—later on they found out that this other gentleman came and took that bag, and that is why it was gone, but they tell you that this gentleman spoke to them, spoke to the police officers, and asked permission to take the tapes. Does that sound credible to you? Does that sound plausible to you that this guy would be so brazen that he would run off with this camera and then come back and speak to the police about it? No. Is that a doubt? Yes. Is that a reasonable doubt? Sure, it is; sure it is."

Defense counsel tried to persuade the jury that the explanation he elicited for why the camera bag was missing, namely, that defendant's friend ran away with it, was not believable. Had defense counsel not elicited the inadmissible hearsay, he would not have had to convince the jury in closing argument that the explanation he elicited was not believable. Defense counsel relied on the explanation for the missing bag provided by the crowd through the hearsay testimony of Rowland and Sample as demonstrating reasonable doubt. However, that explanation, rather than providing a reason for the jury to doubt defendant's guilt, instead incriminated him and provided an additional connection between the camera bag and the defendant by placing the bag in the hands of defendant's friend.

In the instant case, no proceeds were found on defendant or in the area where he was apprehended. Had defense counsel not elicited the inadmissible hearsay, he could have directly argued that the missing camera bag and the lack of any explanation for its disappearance demonstrated reasonable doubt. While the possession of recently stolen property is not an element of burglary (*People v. Campbell*, 161 Ill. App. 3d 147, 156 (1987)), certainly proceeds from a burglary found on a person within minutes of the burglary and in the vicinity of the burglary provide evidence that the person was involved in the burglary.

Moreover, by improperly eliciting the inadmissible hearsay, defense counsel further prejudiced defendant by opening the door for the prosecution to comment in closing argument upon the fact that defendant's friend took the camera bag as follows:

"THE STATE: [Defense counsel] makes a big issue about well, who took this camera case? First of all, that doesn't matter, just as I have explained, but, second of all, we know who took it because on counsel's questions that very issue was answered. You see, his friend came back to the scene and asked the police officer, or the security guards, asked the security guards for the bag of audio-tapes, and he recovered those. He left. He said he was bringing it back to the Defendant's mom. Only after that person left is when Christopher [Rowland] and [Eugene Sample] found out when people on the scene told them that his friend—it was the same guy who picked up the camera and picked up the camera case. So, we have a good idea where that camera case is, don't we?"

The inadmissible hearsay evidence elicited by defense counsel provided an explanation for the significant weakness in the prosecution's case regarding the missing proceeds from the burglary. Defense counsel by eliciting that hearsay provided evidence connecting defendant to the crime and opened the door for the prosecution to rely on that connection in closing argument. By repeatedly eliciting this

incriminating evidence on cross-examination of the State's two key witnesses, defense counsel failed to subject the prosecution's case to meaningful adversarial testing, thereby depriving defendant of a fair trial. *People v. Chandler*, 129 Ill. 2d 233, 248-49 (1989) (failure to subject prosecution's case to meaningful adversarial testing results in defendant being deprived of fair trial). Considering the totality of the circumstances, we conclude defense counsel's deficient performance in repeatedly eliciting incriminating hearsay evidence deprived defendant of a fair trial thereby satisfying the prejudice component of the *Strickland* test. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

In *People v. McMillin*, 352 Ill. App. 3d 336 (2004), similar to the instant case, defense counsel's failure to object to distortion of critical evidence during closing argument, together with defense counsel's interjection of hearsay regarding his client's prior crimes, was held to have constituted deficient representation which undermined confidence in the outcome of the case, depriving defendant of a fair trial. *McMillin*, 352 Ill. App. 3d at 347-48.

For the reasons previously discussed, defense counsel, by eliciting inadmissible hearsay and failing to object to the prosecution's improper closing argument regarding insurance rates, provided deficient representation. The record reflects that defense counsel failed to subject prosecution witnesses to meaningful cross-examination, failed to preserve prejudicial errors with timely objection, and failed to raise these errors in a posttrial motion. We are mindful that the prejudice component of *Strickland* requires the defendant to show the deficient representation rendered the trial result unreliable or the proceeding fundamentally unfair. *Richardson*, 189 Ill. 2d at 411. Based on a thorough review of the record, we cannot conclude that the trial was fundamentally fair. The totality of defense counsel's deficient performance demonstrated ineffective assistance which prejudiced defendant requiring a new trial. We remand for retrial.

## SUFFICIENCY OF EVIDENCE

■ The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt. U.S. Const. amend. XIV; Ill. Const. 1970, art. I, § 2. In the instant case, the relevant question raised by defendant's challenge to the sufficiency of the evidence is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781,

2788-89 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In order to sustain the burglary conviction, the prosecution was required to prove beyond a reasonable doubt that defendant knowingly, without authority, entered a motor vehicle with the intent to commit a felony or theft therein. 720 ILCS 5/19—1 (West 2002).

Christopher Rowland, one of the security guards at the strip mall located at Central Avenue and Madison Street, testified that he noticed someone sitting in the driver's seat of Eugene Sample's car. Sample was also a security guard at the mall. Rowland testified he could see the back of the head of the person in the car and that the person was wearing "what appeared to be a dark-colored jacket." Rowland immediately went into the store to inform Sample. Approximately 10 seconds passed from the time Rowland entered the store until he went back outside and saw defendant walking through the parking lot, about five feet from Sample's car. Rowland testified that defendant was the same person he had just seen inside Sample's car.

Defendant was carrying a box or bag of audio cassettes, and both Rowland and Sample testified that defendant was also carrying Sample's black camera bag from Sample's car. Rowland stopped defendant in the parking lot and a struggle occurred. Rowland sprayed defendant with mace. While Rowland and Sample were trying to detain defendant, an undercover Chicago police officer pulled up and helped them handcuff defendant. Rowland testified that defendant dropped the camera bag during the struggle and that he did not see what happened to it. Sample also testified that he did not see what happened to the camera bag.

Rowland was the only witness to observe defendant inside the victim's car, and he did lose sight of defendant for a short period of time. The record reflects that both Rowland and Sample had an adequate opportunity to observe defendant. We are mindful that the failure to recover the camera bag weakens the prosecution's case; however, possession of burglary proceeds, while evidence of burglary, is not an element of burglary. *Campbell*, 161 Ill. App. 3d at 156.

Defendant further challenges the credibility of Rowland and Sample. Defendant contends that both had a motive to lie, as both admitted they could lose their jobs and be sued if they detained someone improperly in the course of their duties as security guards. Defendant argues that once Sample and Rowland realized that defendant did not have the camera bag and that he must not have been the person inside Sample's car, they had to come up with an explanation for detaining defendant to protect their jobs and to protect themselves from a lawsuit. Defendant argues that as a result, Rowland and Sample testified that they saw him with the camera bag in the parking lot, even though this was not true.

132

While the evidence was not overwhelming, the evidence was sufficient to sustain a conviction for burglary. Based on a thorough review of the record, we cannot say, viewing all of the evidence in the light most favorable to the prosecution, that defendant has demonstrated the evidence was so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of his guilt. For the reasons previously discussed, we remand for a new trial. Double jeopardy is not implicated because there is sufficient evidence to prove defendant guilty beyond a reasonable doubt. *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979). In light of the remand for retrial, it is unnecessary to address the other arguments raised by defendant on appeal.

Reversed and remanded.

FITZGERALD SMITH, P.J., and McNULTY, J., concur.